IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Fidelity and Guaranty Insurance Underwriters, Inc., | : : : | Case No. C-1-03-843 |
| Plaintiff, | : : | District Judge Susan J. Dlott |
| v. | : : | ORDER GRANTING PLAINTIFF'S |
| Nationwide Tanks, Inc., *et al.*, | : : | MOTION FOR SUMMARY JUDGMENT |
| Defendants. | : | |

This matter comes before the Court on Plaintiff Fidelity and Guaranty Insurance Underwriters, Inc. ("FGIU")'s Motion for Summary Judgment (doc. #9). For the reasons that follow, the Court **GRANTS** FGIU's Motion for Summary Judgment (doc. #9) and **DECLARES** that FGIU owes Defendant Nationwide Tanks no duty to defend or to indemnify it for the injuries alleged in the underlying case and owes no payment to Intervenor Defendants Northeast Fertilizer II, Inc. d/b/a/ Morral Chemical Company ("Northeast") and Land O'Lakes.

I.  FACTS AND PROCEDURAL POSTURE

A.  FACTS

This action arises out of an insurance coverage dispute.[1] Plaintiff FGIU was the insurer on a primary liability insurance policy[2] ("policy") issued to Defendant Nationwide Tanks on June 1, 1996, and terminated by FGIU on February 7, 1997 for the nonpayment of premiums. Nationwide Tanks, which is now defunct, was an Ohio corporation that manufactured above-

---

[1]The parties agree that the following facts are undisputed.  (See doc. #9 and doc. #12 at 3.)

[2]The policy number is 1MP30127575500.  (See doc. #9, ex. A.)

1

ground storage tanks.

On or about December 23, 1992, Nationwide Tanks contracted to build a 1.5 million gallon above-ground fertilizer storage tank for Northeast, an Ohio company that manufactures liquid fertilizer. Nationwide Tanks began constructing the tank in early 1993.[3] On March 3, 2000, the tank ruptured, spilled its contents and caused damage to both Northeast's property and several neighboring properties.

### B. PROCEDURAL POSTURE

On March 4, 2002, Intervenor Defendants Northeast and Land O'Lakes – which at all relevant times had an ownership interest in Northeast – and their insurance carriers filed suit against Nationwide Tanks in Cuyahoga County, Ohio, seeking reimbursement for their costs and damages caused by the tank's rupture. On October 22, 2002, legal counsel for Intervenor Defendants and their insurance carriers forwarded the underlying action to FGIU, along with a motion for entry of a default judgment against Nationwide Tanks. FGIU accepted a defense of Nationwide Tanks in the underlying action pursuant to a reservation of rights. On October 17, 2005, Judge Matthew J. Crehan of the Butler County Court of Common Pleas, where the underlying action had been transferred, entered an order granting the underlying plaintiffs' motion for summary judgment against Nationwide Tanks. See Land O'Lakes, Inc. v. Nationwide Tanks, Inc., No. CV03-12-3514, slip op. at 4 (Ohio Ct. Com. Pleas Oct. 17, 2005). Judge Crehan found that the evidence showed no genuine issue of material fact that the tank's rupture and the subsequent damages were caused by a "failure of [the tank's] vertical seam weld and corrosion." Id., slip op. at 3,4. Judge Crehan did not have before him and did not consider

---

[3]Sometime after completing the tank for Northeast, Nationwide Tanks became insolvent and filed for bankruptcy.

the question of insurance coverage for those damages. In a status conference with this Court on January 24, 2006, FGIU's counsel advised the Court that it was appealing the order in the underlying case.

FGIU filed this action seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. FGIU seeks a declaratory judgment that it does not owe any duty to defend or indemnify its former insured, Defendant Nationwide Tanks, Inc., nor any payment to Intervenor Defendants. As it is defunct, Nationwide Tanks has not answered FGIU's complaint nor made an appearance in the action. Consequently, Intervenor Defendants have been the sole defenders against this declaratory judgment action. On July 23, 2004, FGIU filed the instant motion for summary judgment (doc. #9).[4]

## II. ANALYSIS

### A. Jurisdiction and Legal Standards

---

[4] On January 24, 2006, at a status conference with the parties, the Court requested that, by February 1, 2006, the parties file simultaneous supplemental briefs of any new law since the parties' original briefing on summary judgment, and by February 8, 2006, that the parties file simultaneous responses to the supplemental briefs. Intervenor Defendants filed a timely Supplement to Brief in Opposition to Fidelity and Guaranty Insurance Underwriters, Inc.'s Motion for Summary Judgment (doc. #23). FGIU did not file a supplemental brief, but did file a timely Response to Intervenor Defendants' supplemental brief (doc. #24).

The Court notes that the parties seemed to misinterpret its request for supplemental briefing on new law as an opportunity to rebrief this case. Intervenor Defendants' supplemental brief includes several opinions which it did not cite in its original Brief in Opposition, but only one of those opinions was issued after the parties' original briefing on summary judgment. In coming to this decision, then, the Court has considered that new opinion, but has not considered the citations which Intervenor Defendants could have included in their original Brief in Opposition. (All of the cases Intervenor Defendants cited in their supplemental brief are from other jurisdictions, and therefore would serve only as persuasive authority in any event.) In its Response to Intervenor Defendants' supplemental brief, FGIU did not cite to any new law, but cited only cases it had cited in its prior briefs or cases which Intervenor Defendants raised in their supplemental brief.

This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332.  Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that permissibly can be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmoving party "must set forth specific facts showing there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  Id. at 252.

"In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state."  Talley v. State Farm Fire and Cas. Co., 223 F.3d 323, 326 (6th Cir. 2000).  The parties agree that Ohio law applies here.  (See doc. #9 at 7,8; doc. #12 at 9.) "Under Ohio law, the construction of an insurance contract is a matter of law for the court.  In interpreting the insurance policy, 'words and phrases used in an insurance policy must be given their natural and commonly accepted meaning.'"  United Nat'l Ins. Co. v. SST Fitness Corp., 182 F.3d 447, 449-450 (6th Cir. 1999).

    **B.**    **Defendant's Motion for Partial Summary Judgment**

FGIU has moved for summary judgment on Count I of its complaint, which seeks a

declaratory judgment[5] that it owes Nationwide Tanks no duty to defend or indemnify it, and consequently owes no payment to Intervenor Defendants. FGIU argues in relevant part that it owes no duties to Nationwide Tanks because the injuries alleged in the underlying complaint did not occur during the policy period. In the underlying complaint, Intervenor Defendants repeatedly described their injuries as follows: "the 1.5 million-gallon tank (known as Tank 46) ruptured catastrophically, spilling its contents and causing damage including extensive property damage and damage to [Northeast]'s business operations." (See doc. #9, ex. C, ¶¶10,17,20,25.) Intervenor Defendants' complaint also noted injuries "suffered by third parties who then made claims against [Northeast] and Land O'Lakes." (Id., ex. C, ¶11.)

The policy provides that FGIU "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy defines "property damage" as:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Id., ex. A at A-19.) The policy provides further that:

---

[5] 28 U.S.C. § 2201 provides in part, with certain exceptions inapplicable here, that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

  b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2) The "bodily injury" or "property damage" occurs during the policy period.

(See doc. #9, ex. A at A-8.) The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id., ex. A at A-18.)

  FGIU is correct that under an occurrence-based policy, the kind of policy at issue here, an insurer does not owe coverage where the alleged injuries did not occur during the policy period. See, e.g., Wells v. Westfield Ins. Co., Nos. 99-CO-7, 99-CO-12, 2001 WL 96126, at *9-*10 (Ohio. App. 7th Jan. 30, 2001) (affirming summary judgment for insurer where injury occurred outside of policy period); Ruffin v. Sawchyn, 75 Ohio App. 3d 511, 517, 599 N.E.2d 852, 855 (Ohio App. 8th 1991) (overruling declaratory judgment for insured where injury occurred outside of policy period). Here, the policy began on June 1, 1996, and was terminated by FGIU on February 6, 1997. (See doc. #9, ex. A at 12.) Under the policy's definition of property damage, injuries are "deemed to occur at the time of the physical injury that caused [them]." FGIU argues that thus, under the policy, Intervenor Defendants' injuries occurred on the day the tank ruptured and caused those injuries. FGIU concludes that under the plain language of the insurance policy, the injuries occurred more than three years after the end of the policy period, and therefore are not covered "property damage" under the policy.

  Intervenor Defendants argue that under the policy, "FGIU provides coverage for National Tank from liability for any act occurring while the policy is in effect; coverage depends on when

the negligent act or omission occurred, not when the claim was asserted." (Doc. #12 at 7.) Intervenor Defendants submit that Nationwide Tanks was negligent in constructing the tank, and caused an injury to the tank that began as soon as it was placed into operation, continued during the policy period, and later resulted in the tank's rupture. Intervenor Defendants argue that as such, this case is analogous to cases such as Goodyear v. Aetna, 95 Ohio St. 3d 512, 769 N.E.2d 835 (Ohio 2002) and Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co., 210 F.3d 672 (6th Cir. 2000), in which the courts applied a "continuous trigger" theory. Intervenor Defendants cite these cases for the proposition that "when damage occurs over multiple policy periods, Ohio courts apply a "continuous trigger." Intervenor Defendants conclude that because the tank corroded in a continuous process, it falls within the policy's definition of an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (See doc. #12 at 7.)

Intervenor Defendants' argument fails. First, where an insurance contract limits coverage to injuries that occur during the policy period, the relevant date for triggering coverage is the date of the injuries, not the date of negligence that caused the injury. See, e.g., Wells, 2001 WL 96126, at *9-*10 (affirming judgment for insurer where negligence occurred during, but injury occurred after, policy period); Ruffin, 75 Ohio App.3d at 517, 599 N.E.2d at 855 (citing Gibbons v. Kelly, 156 Ohio St. 163, 101 N.E.2d 497, paragraph one of court's syllabus (1951)) (overruling declaratory judgment for insured where injury occurred outside of policy period); Clapper v. Columbia Mfg. Co., No. 5-87-41, 1989 WL 77020, at *1 (Ohio App. 3d 1989) (affirming holding that policy did not require insurer to defend or indemnify for defective product sold during policy period where injury occurred after policy expired). Second, as neither

7

Goodyear nor Lincoln Electric is analogous to this case, the Court will not extend their holdings to apply here. Both Goodyear and Lincoln Electric involved "long-term exposure and delayed manifestation injur[ies]," or in other words, continuous accidents and damages. See Lincoln Elec., 210 F.3d at 677 (construing coverage for workers' injuries from long-term asbestos exposure); Goodyear, 95 Ohio St. 3d at 515, 520; 769 N.E.2d at 840, 844 (construing allocation of coverage for continuous, long-term migration of pollutants from landfills).[6] Therefore, at least a portion of the injuries in those cases did occur during a policy period, and often during more than one policy period. Here, the court in the underlying case found that Intervenor Defendants' injuries, i.e., the tank's rupture and subsequent property damage, were caused by a faulty welded seam and corrosion. While damage to the tank itself from corrosion may have occurred continuously, including during the policy period,[7] the injuries that Intervenor Defendants alleged in the underlying case did not involve long-term exposure or delayed manifestation injuries. The injuries here occurred in one fell swoop, well outside the policy period, when the tank burst on March 3, 2000. Thus, neither Goodyear nor Lincoln Electric calls for a departure from the

---

[6]The same is true of American Employer's Ins. Co. v. Pinkard Const. Co., 806 P.2d 954 (Col. App. Ct. 1990), which Intervenor Defendants offer as persuasive authority. In Pinkard, the Colorado Court of Appeals held that because the corrosion of a roof installed by the insured was a progressive and continuous condition that occurred under each policy, each policy was triggered. The policy at issue in Pinkard included a crucial clause absent from the policy here, which provided that "'property damage arising out of continuous or repeated exposure to substantially the same general condition shall be considered as arising out of one occurrence.'" Id. at 955. (This clause was in addition to the definition of occurrence, which itself included the "continuous or repeated exposure" language. Despite this same language, the definition of occurrence in the Pinkard policy, as well as the definition of property damage, was otherwise different from those in the policy at issue here.) The Colorado Court of Appeals construed that clause to mean that the long-term corrosion was but one occurrence, that occurred in each policy period. Id. at 955-56. Also, unlike here, the damages in that case all involved the damage to the roof itself, not consequential property damage. The Court declines to apply Pinkard here.

[7]Notably, the court did not make a finding as to when the corrosion began.

8

general principle of Ohio law that it is the time of the injury, not the time of negligence causing the injury, that controls whether an injury triggers coverage during the policy period.

In sum, because the injuries alleged by Intervenor Defendants in the underlying case did not occur during the policy period, they do not qualify as covered property damage under the policy, and FGIU does not owe Nationwide Tanks any duty of defense or indemnity as a matter of law.[8]  Consequently, FGIU owes no payment to Intervenor Defendants.  The Court therefore **GRANTS** FGIU's Motion for Summary Judgment.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (doc. #9).  The Court therefore **DECLARES** that FGIU owes Nationwide no duty to defend or to indemnify it for the injuries alleged in the underlying case and owes no payment to Intervenor Defendants.

IT IS SO ORDERED.

    s/Susan J. Dlott           
Susan J. Dlott
United States District Judge

---

[8]FGIU also argued in its motion for summary judgment that it owes no duties to Nationwide Tanks because the policy's pollution exclusion clause excludes coverage for the injuries alleged in the underlying action. Having already found that FGIU owes Nationwide Tanks no duty to defend or indemnify it as a matter of law, the Court need not and declines to consider FGIU's alternative argument that the policy's pollution exclusion clause bars coverage.